(No. 50845.—

THE CITY OF ROCKFORD *et al.*, Appellants, v. PAUL P. GILL, County Clerk, Appellee.

*Opinion filed March 20, 1979.*

A. Curtis Washburn, Stephen W. McCarty, and Connolly, Oliver, Godard, Caplan & Close, of Rockford (Robert J. Oliver, of counsel), for appellants.

Daniel D. Doyle, State's Attorney, of Rockford (William Gates, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, the city of Rockford, filed suit in the circuit court of Winnebago County, seeking a declaration that an ordinance levying taxes for library purposes in excess of the statutory limit was valid under the city's home rule powers. Defendant Paul P. Gill, the county clerk, had refused to extend the levy provided for by the ordinance on the ground that it exceeded the maximum tax rate for library purposes permitted by section 3—1 of the Illinois Local Library Act (Ill. Rev. Stat. 1975, ch. 81, par. 3—1). Consequently, the city also sought to enjoin the county clerk from extending for library purposes an amount of

tax less than that provided by the ordinance. The trial court granted the city's motion for summary judgment, the county clerk appealed, and the appellate court reversed and remanded, holding that despite its home rule power to tax, the city could not exceed the library tax rate fixed by the statute (60 Ill. App. 3d 94). We allowed the city leave to appeal and we now reverse.

At all relevant times section 3—1 of the Act provided:

> "In any city of 500,000 or fewer inhabitants, the corporate authorities shall levy a tax for library purposes of not to exceed .15% of the value of all the taxable property in the city, as equalized or assessed by the Department of Local Government Affairs." (Ill. Rev. Stat. 1975, ch. 81, par. 3—1.)

The Rockford Public Library is governed by the Act, which was first adopted in 1965. Despite the statutory limitation of .15%, the library board requested and the city adopted a tax-levy ordinance for library purposes in 1976 in an amount requiring a tax rate of .1604%. The ordinance recited that it was adopted pursuant to the procedures set forth in section 3—1 of the Act, but that the tax-rate limitation was inapplicable because the ordinance was enacted pursuant to the city's taxing power as a home rule municipality under article VII, section 6(a), of our 1970 Constitution. That section provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

In addition to refusing to extend the levy in the amount provided by the ordinance because it exceeded the statutorily mandated rate, the county clerk also contended that the ordinance was void because the city had failed to allow 10 days to elapse between the publication of the appropriation ordinance and the passage of the tax-levy

ordinance, as required by section 1—2—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—2—4). The trial court held that because the statutory limitation on the library-tax levy had been enacted prior to the adoption of the 1970 Constitution, it was superseded by the taxing power that the Constitution granted to home rule units. The court accordingly held the tax-levy ordinance valid, directed defendant to extend the amount levied, and enjoined the extension of any lesser amount.

We agree with the appellate court that the issue here may be stated simply as whether a home rule municipality may levy a tax for library purposes in excess of the .15% limit imposed by the statute governing local libraries. In our judgment, however, an affirmative answer is clearly required by the earlier decisions of this court.

In *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, this court held that pursuant to its power to incur debt (Ill. Const. 1970, art. VII, sec. 6(a)) a home rule county could issue general obligation bonds without prior referendum approval by county voters, although a pre-1970 statute required such approval. What the court said about home rule powers in *Kanellos* bears repeating:

"The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government. Formerly, the actions of local governmental units were limited to those powers which were expressly authorized, implied or essential in carrying out the legislature's grant of authority. Under the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their govern-

ment and affairs. To accomplish this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein." (53 Ill. 2d 161, 166.)

Noting that the concept of home rule was "totally foreign in the contemplation of legislation adopted prior to the 1970 Constitution" (53 Ill. 2d 161, 166-67), the court held that the prior statute was inapplicable to a home rule county. This court subsequently followed the rationale of *Kanellos* in a series of decisions approving ordinances adopted by home rule units pursuant to section 6(a) of article VII despite the fact that those ordinances conflicted with existing statutes enacted prior to the adoption of the 1970 Constitution. *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523; *Paglini v. Police Board* (1975), 61 Ill. 2d 233; *Peters v. City of Springfield* (1974), 57 Ill. 2d 142; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561.

The appellate court in this case found that the General Assembly intended the library to be "a separate and independent taxing body whose finances and administration will remain apart from the exigencies of municipal politics." (60 Ill. App. 3d 94, 100.) That finding was predicated upon the statutory provision that monies collected from the library tax shall be deposited in a special fund under the control of the board of library directors and that the municipal authorities are to levy library taxes in the amounts determined by the board. That court also noted that the statute was amended effective July 1, 1978 (Pub. Acts 80—1152 and 80—1153, Ill. Rev. Stat., 1977 Supp., ch. 81, par. 3—1), to retain the tax rate of .15% but to provide, subject to a referendum if requested, for an additional tax rate of .02% for sites, buildings, building maintenance equipment, and repairs. The appellate court reasoned: "Inasmuch as this provision

would not be appropriate or necessary if the legislature considered the city to have taxing power over and beyond the statute, under its home rule powers, we deduce that such unlimited taxing power for library purposes was not intended to be given under the home rule powers." 60 Ill. App. 3d 94, 100.

In focusing on this question, however, the appellate court misconceived the proper nature of the present inquiry. It is manifestly impossible to find a legislative intention to limit the city's home rule powers of taxation in a statute that pre-dates the 1970 Constitution because, as this court said in *Kanellos,* the concept of home rule was "totally foreign" to pre-1970 legislative contemplation. (53 Ill. 2d 161, 166-67.) Nor does the 1978 amendment, even had it been adopted in time to apply to the years in question here, support a different conclusion, for we have repeatedly held that a statute enacted after the adoption of the 1970 Constitution can restrict home rule taxing powers only if it is approved by a three-fifths majority of both houses (Ill. Const. 1970, art. VII, sec. 6(g)) and specifically expresses a restrictive purpose. (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 528; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550; *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435.) There is no contention that the amendment in question here meets these tests. Additionally, of course, section 6(h) of article VII authorizes the legislature to "provide specifically by law for the exclusive exercise by the State" of most home rule powers. (Ill. Const. 1970, art. VII, sec. 6(h).) This does not mean that enactment of the amendment was a "futile gesture," as the appellate court suggested (60 Ill. App. 3d 94, 100). The additional tax rate gives added flexibility to non-home-rule units, which draw their power to tax for library purposes from the statute; it is simply inapplicable to home rule units.

Finally, we consider the second major contention

raised by defendant in the trial court, which the appellate court did not reach in view of its disposition of the case. Defendant asserts that the city's library tax levy for 1976, as well as the levy for 1977, was illegal and void for failure to comply with the time periods for publication of ordinances prescribed by section 1—2—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—2—4), in that the city failed to publish the appropriation ordinance 10 days before passing the levy ordinance. (*People ex rel. Franklin v. Wabash R.R. Co.* (1944), 387 Ill. 450; *People ex rel. Larson v. Thompson* (1941), 377 Ill. 104.) We agree with the city, however, that defendant has no standing to raise this issue.

Defendant clearly has standing to raise the issue of whether the levy exceeded the amount authorized by law, because a county clerk has a statutory duty to disregard any amount certified for extension that exceeds the maximum allowed by law (Ill. Rev. Stat. 1975, ch. 120, par. 643). No statute, however, authorizes a county clerk to determine whether a levy is illegal and void *in toto*. Moreover, the statute requiring publication of the appropriation ordinance was designed for the protection of taxpayers. (*People ex rel. Sullivan v. Florville* (1903), 207 Ill. 79.) Defendant has cited no decision, and we have found none, in which a court has allowed the county clerk, rather than a taxpayer, to challenge the legality of a taxing ordinance on this ground. On the contrary, this court has long held that a county clerk has no power to levy taxes or determine whether taxes have been legally assessed. His duties in the extension of taxes are purely ministerial. (*People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216; *People ex rel. Smith v. National Plate Glass Co.* (1931), 344 Ill. 340, 345; *People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* (1925), 316 Ill. 410, 414. See also *People ex rel. Carter v. Touchette* (1955), 5 Ill. 2d 303,

306.) We hold that this statement of the law is dispositive of the issue before us. The clerk's duties in respect of the extension of taxes being purely ministerial, he may not refuse to extend a levy in an amount authorized by law on the ground that the levy is void for failure to comply with statutorily prescribed procedures.

Accordingly, the judgment of the appellate court is reversed; the judgment of the circuit court, upholding the validity of the levy and enjoining the county clerk from extending a lesser amount, is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*