AURORA PIZZA HUT, INC., d/b/a Pizza Hut, Plaintiff-Appellant, *v.*
VIRGINIA M. HAYTER, Local Liquor Commissioner of Hoffman Estates, *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 79-415

Opinion filed December 28, 1979.

Rudd and Dickler, of Schaumburg (Marshall N. Dickler, of counsel), for appellant.

Richard N. Williams, of Hoffman Estates, for appellee Virginia M. Hayter.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for other appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) to review the rulings of defendants Virginia Hayter, liquor commissioner of Hoffman Estates, and the State Liquor Control Commission denying plaintiff a renewal of its liquor license. The circuit court affirmed the rulings of Hayter (Hoffman Estates) and the State Liquor Control Commission (Commission). Plaintiff appeals from that judgment. On appeal, plaintiff contends that the licensing ordinances of Hoffman Estates violate due process because of an internal inconsistency; that the licensing ordinances of Hoffman Estates violate due process because they are inconsistent with the Illinois Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 94 *et seq.*); that denial of a liquor license can only be made for the reasons found in the Illinois Liquor Control Act, and not for a reason found only in the licensing ordinances of Hoffman Estates; and that the licensing ordinances of Hoffman Estates violate the commerce clause of the United States Constitution.

Plaintiff received a liquor license from Hoffman Estates on May 1, 1977. On March 3, 1978, plaintiff applied to Hoffman Estates for a renewal of its liquor license. The application was denied because plaintiff failed to name a resident of Hoffman Estates as manager of the premises as required by article III, section 8—3—5(23) of the Hoffman Estates Municipal Code (municipal code). In its appeal to the Commission, plaintiff argued that sections 8—3—5(9) and 8—3—5(11) of the municipal code state that the manager of the license applicant need not be a resident of Hoffman Estates. Plaintiff further argued that section 2 of article VI and section 1 of article IV of the Illinois Liquor Control Act (Ill. Rev. Stat.

1977, ch. 43, pars. 120(10), 110) also state that the manager of the license applicant need not be a resident of the licensing political subdivision. These arguments were rejected by both the Commission and the circuit court.

OPINION

Plaintiff's initial argument raises the question of whether the licensing ordinances of Hoffman Estates require a manager of the premises to be a resident of Hoffman Estates. The relevant portions of article III, section 8—3—5 of the municipal code follow:

"No license shall be issued to:
    *   *   *

(9) A corporation, if any officer, manager or director thereof, or any stock holder or stockholders owning directly or beneficially in the aggregate more than five per cent (5%) of the stock in such corporation, would not be eligible to receive a license hereunder for any reason other than citizenship and residence within the village.
    *   *   *

(11) A person whose place of business is conducted by a manager or agent said manager or agent possesses the same qualifications required of the licensee:
    *   *   *

(23) A corporation, unless the designated person operating as manager of the premises as required by Section 8—3—4 is a resident of the village." (Hoffman Estates Municipal Code, art. III, §8—3—5.)

Plaintiff maintains that paragraphs (9) and (11), indicating that the manager need not be a resident of the village, are in conflict with paragraph (23) requiring that the manager of the premises be a resident of the village. Defendants, on the other hand, argue that the "manager" referred to in paragraphs (9) and (11) is not the same person as the "manager of the premises" referred to in paragraph (23). Thus, according to the defendants, no conflict exists.

■■■ Stripped of all language not relevant to this issue, paragraph (9) prohibits the issuance of a license to "[a] *corporation, if any* * * * *manager* * * * *thereof,* * * * would not be eligible to receive a license hereunder for any reason other than citizenship and residence within the village." (Emphasis added.) (Hoffman Estates Municipal Code, art. III, par. 8—3—5(9).) In comparison, paragraph (23) prohibits the issuance of a license to a corporation unless the person "operating as *manager of the premises*" is a resident of the village. An elementary canon of statutory construction teaches us that where the legislature uses certain words in

one instance, and different words in another, different results were intended. (*Illinois State Toll Highway Authority v. Karn* (1973), 9 Ill. App. 3d 784, 293 N.E.2d 162.) Applying this rule to the present case, we believe the legislators of Hoffman Estates were speaking of two different individuals when they drafted these paragraphs. Paragraph (23) involves the individual managing the premises for which the liquor license is issued; this individual is responsible for the day-to-day operations of these premises. Paragraph (9), however, involves the manager of the corporation, as a whole, which is applying for the liquor license; this individual is responsible for the general conduct and control of the entire corporation. (See *Freeport Journal-Standard Publishing Co. v. Frederick W. Ziv Co.* (1952), 345 Ill. App. 337, 103 N.E.2d 153; *Dade County Dairies, Inc. v. Projected Planning Co.* (Fla. App. 1963), 158 So. 2d 565; and *Gillian v. Consolidated Foods Corp.* (1967), 424 Pa. 407, 227 A.2d 858.) Since these ordinances are directed at two different individuals, no conflict exists between them.

Plaintiff also contends that Hoffman Estates' requirement that the manager of the premises be a resident of Hoffman Estates conflicts with section 2 of article VI and section 1 of article IV of the Liquor Control Act. (Ill. Rev. Stat. 1977, ch. 43, par. 120(10), 110.) Section 2 of article VI is almost identical to article III, section 8—3—5(9) of the municipal code and states in pertinent part:

"No license of any kind issued by the State Commission or any local commission shall be issued to:

❋ ❋ ❋

(10) A corporation, if any officer, manager or director thereof, ❋ ❋ ❋ would not be eligible to receive a license hereunder for any reason other than citizenship and residence within the political subdivision;" (Ill. Rev. Stat. 1977, ch. 43, par. 120(10).)

Once again we feel that the choice of words employed by the legislature indicates that this section is directed at the manager of the entire corporation which is applying for a liquor license. Consequently, this section is not in conflict with article III, section 8—3—5(23) of the municipal code which is limited to the manager of the premises for which the liquor license is issued.

A more difficult question is presented by the apparent conflict between section 1 of article IV of the Liquor Control Act and article III, section 8—3—5(23) of the municipal code. Section 1 of article IV, authorizing local governmental units to license and regulate the retail sale of alcoholic beverages, provides in pertinent part:

"[I]n the exercise of any of the powers granted in this section, the issuance of such licenses shall not be prohibited except for reasons

specifically enumerated in sections 2, 8, 8a, and 21 of article VI of this Act." (Ill. Rev. Stat. 1977, ch. 43, par. 110.)

Since the Liquor Control Act does not require that the manager of the premises be a resident of the licensing political subdivision, plaintiff argues that section 1 of article IV prohibits local liquor commissions from refusing to issue liquor licenses on this ground. In reply, defendants contend that article III, section 8—3—5(23) is a valid exercise of Hoffman Estates' home-rule powers under article VII of the Illinois Constitution of 1970 and therefore, section 1 of article IV of the Liquor Control Act does not bind Hoffman Estates. Consequently, we turn our attention to the powers and limitations of a home-rule unit of government in relation to the State of Illinois.

Initially, we note that the status of Hoffman Estates as a home-rule unit of government is not challenged. (See Ill. Const. 1970, art. VII, §6(a).) A home-rule unit has the power to regulate matters pertaining to the public health, safety, morals and welfare. (Ill. Const. 1970, art. VII, §6(a).) In *Daley v. Berzanskis* (1971), 47 Ill. 2d 395, 269 N.E.2d 716, *cert. denied* (1971), 402 U.S. 999, 29 L. Ed. 2d 166, 91 S. Ct. 2173, our supreme court held that regulation of alcoholic beverages is intimately related to the public health, safety, morals and welfare. Thus, the licensing ordinances at question in this case is a valid exercise of Hoffman Estates' authority as a home-rule unit. *Liquor Control Commission v. City of Calumet City* (1975), 28 Ill. App. 3d 279, 328 N.E.2d 153.

■ Plaintiff contends, however, that Hoffman Estates' exercise of its home-rule powers in the regulation of alcoholic beverages is effectively limited by section 1 of article IV of the Liquor Control Act. Sections 6(g), 6(h) and 6(i) of article VII of the Illinois Constitution of 1970 expressly state the conditions under which an act of the General Assembly may limit the powers of a home-rule unit. Before examining these sections we note that the Illinois Supreme Court has consistently held that a statute enacted prior to the effective date of the Illinois Constitution of 1970 (July 1, 1971) is subordinate to an ordinance enacted by a home-rule unit under the grant of powers found in section 6(a). (See, *e.g., City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 388 N.E.2d 384; and *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 290 N.E.2d 240.) In reaching this conclusion, our supreme court has reasoned that the concept of home rule and the related limitations of home-rule powers were "totally foreign" to the contemplation of the legislature prior to the 1970 constitution; therefore, no legislative intent to limit the powers of a home-rule unit could exist prior to 1970. (*Rockford*, 75 Ill. 2d 334, 340, 388 N.E.2d 384, 387.) Since the critical language of section 1 of article IV was added as an amendment to section 1 of article IV in 1941 (1941 Ill. Laws, vol. 1, p. 28, §1),

no legislative intent to limit the powers of a home-rule unit existed at that time. Thus, plaintiff's argument with regard to the limiting effect of section 1 of article IV turns on the General Assembly's re-enactment of that statute in 1977. Pub. Act 80-326, §1, eff. Oct. 1, 1977.

■■■ The first constitutional provision which allows the General Assembly to limit the powers of a home-rule unit is article VII, section 6(g) of the Illinois Constitution of 1970. Section 6(g) states in pertinent part:

> "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State * * *." (Ill. Const. 1970, art. VII, §6(g).)

Since section 1 of article IV of the Liquor Control Act, as re-enacted by P.A. 80-326 in 1977, was passed by more than three-fifths of the members of both houses, the question becomes whether section 1 of article IV denies or limits the powers of home-rule units. Our supreme court has had occasion to consider a legislative limitation of home-rule powers under section 6(g) in *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 303 N.E.2d 389. In that case, the issue was whether a wheel-tax ordinance of the City of Chicago was a valid exercise of Chicago's home-rule powers. Plaintiff, in *Rozner*, argued that pre-1970 legislative limitations on the powers of local governments to impose a local wheel-tax were reinstated by an amendment of the relevant statute which was approved by three-fifths of the members of each house and became law after the effective date of the 1970 constitution. In deciding this issue, the supreme court stated:

> "While section 6(g) of article VII authorizes the General Assembly, by a law approved by three fifths of the members of each house, to deny or limit the power of a home-rule unit, it does not follow that every statute relating to the powers of municipalities generally will, if adopted by a three-fifths vote, have a bearing upon the powers of those municipalities which are home-rule units. The powers which those units have received under section 6 of article VII of the constitution of 1970 are in addition to the powers heretofore or hereafter granted by the General Assembly to other municipalities. The kind of inadvertent restriction of the authority of home-rule units for which the plaintiff contends can be avoided if statutes that are intended to limit or deny home-rule powers contain an express statement to that effect. The statute before us contains no indication of a restrictive purpose, and we hold that it had no restrictive effect." (*Rozner*, 55 Ill. 2d 430, 435, 303 N.E.2d 389, 391-92.)

Thus, where a statute enacted after July 1, 1971, is approved by a three-fifths majority of both houses and specifically expresses a purpose to limit

the powers of home-rule units, it constitutes a valid restriction on home-rule powers under section 6(g). (*City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 388 N.E.2d 384, and *Village of Hoffman Estates v. Union Oil* (1977), 56 Ill. App. 3d 52, 370 N.E.2d 1304.) Section 1 of article IV does not specifically state a purpose to limit the powers of home-rule units, and we hold that it has no restrictive effect under article III, section 6(g) of the Illinois Constitution of 1970.

■■ An act of the General Assembly may exclude the exercise of home-rule powers in a certain field by providing "specifically by law for the exclusive exercise by the State" of such powers. (Ill. Const. 1970, art. VII, §6(h).) Plaintiff contends that the opening language of section 1 of article IV of the Liquor Control Act indicates a legislative intent to pre-empt by the State the regulation of liquor licenses. More specifically, plaintiff relies on the following language: "In every city, village or incorporated town, * * *." (Ill. Rev. Stat. 1977, ch. 43, par. 110.) First, we note that this language was present in the original version of section 1 of article IV in 1933, and as stated above, a legislative intent to limit home-rule powers was manifestly impossible prior to the 1970 constitution. (*City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 388 N.E.2d 384; *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 290 N.E.2d 240.) Second, section 6(h) requires that the legislature's intention to pre-empt home-rule powers in a certain field be specifically stated in the statute. Section 1 of article IV of the Liquor Control Act does not specifically provide for the exclusive exercise by the State of the regulation of alcoholic beverages. For these reasons, we hold that section 1 of article IV of the Liquor Control Act is not a limitation of home-rule powers under section 6(h).

Section 6(i) is the final constitutional provision which allows the general assembly to limit home-rule powers. Section 6(i) provides:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." (Ill. Const. 1970, art. VII, §6(i).)

We believe a brief discussion of the policy considerations involved in the concurrent exercise of legislative authority by home-rule units and the State is warranted before examining section 6(i). First, we note that the framers of the 1970 constitution intended to strengthen the role of local governmental units because in their opinion local government units were more responsive to community needs and more effective in meeting those needs. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1605) (Report of the Local Government Committee) (hereinafter referred to as Proceedings).) In pursuing this objective, the framers were aware of the potential difficulties which would arise where both the State and

home-rule units had concurrent authority. The Local Government Committee expressed the decision of the framers as follows:

"As to the problem of fragmenting governmental powers in metropolitan areas, we believe that the solution does not lie in denying suitable powers to local governments which only aggravates the problem of fragmentation, but rather in encouraging the use of powers in a cooperative manner by local entities in metropolitan areas * * *." (7 Proceedings 1615.)

Finally, the Committee stated that concurrent home-rule action would be permitted unless a contrary intent is clearly expressed by the General Assembly. (7 Proceedings 1644-45.) Consistent with these policy determinations is article VII, section 6(m) of the 1970 constitution which provides that "[p]owers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, §6(m).) With this in mind, we direct our attention to the applicability of section 6(i) to this case.

■■ The issue is whether the General Assembly through the re-enactment of section 1 of article IV of the Liquor Control Act in 1977 has either "specifically" limited local exercise or "specifically" declared the State's exercise to be exclusive under section 6(i). As we have stated in our discussion of section 6(h), section 1 of article IV does not "specifically" state that the State's regulation of liquor licenses is exclusive. Similarly, section 1 of article IV does not "specifically limit" the concurrent exercise by home-rule units of the regulation of liquor licenses. Consequently, section 1 of article IV of the Liquor Control Act, as re-enacted in 1977, does not constitute a limitations on the power of home-rule units to regulate liquor licenses under article VII, section 6(i) of the Illinois Constitution of 1970.

In summary, we hold that the regulation of liquor licenses is an area of concurrent authority between the State and home-rule units. As we have noted above, the concept of concurrent authority between the State and home-rule units was strongly endorsed by the framers of the 1970 constitution. Thus, article III, section 8—3—5(23) of the Hoffman Estates Municipal Code is an additional requirement for obtaining a liquor license, not found in the Liquor Control Act. Our decision does not render section 1 of article IV of the Liquor Control Act a nullity, but does limit its applicability to non-home-rule units.

Plaintiff's final argument on appeal is that Hoffman Estates' requirement that the manager of the premises, for which the liquor license is issued, be a resident of Hoffman Estates is an unreasonable restraint on interstate commerce and therefore, violates the commerce clause of the United States Constitution. (U.S. Const., art. 1, §8, cl. 3.) Defendants reply that the regulation of the distribution of alcoholic

beverages is a valid exercise of the State's police power and that the effect on interstate commerce is minimal.

■■ We initially note that the purpose of the commerce clause is "to create an area of free trade among the several States." (*McLeod v. J. E. Dilworth Co.* (1944), 322 U.S. 327, 330, 88 L. Ed. 1304, 1307, 64 S. Ct. 1023.) Consistent with this principle, the individual States may not place themselves in a position of economic isolation in relation to each other. (*Baldwin v. G.A.F. Seelig, Inc.* (1935), 294 U.S. 511, 79 L. Ed. 1032, 55 S. Ct. 497.) Moreover, under our constitutional scheme the States retain broad powers to legislate for the protection of their citizens in matters such as public health and thus, not every exercise of local power violates the commerce clause merely because it affects in some fashion interstate commerce. (*Great Atlantic & Pacific Tea Co. v. Cottrell* (1976), 424 U.S. 366, 47 L. Ed. 2d 55, 96 S. Ct. 923.) The Supreme Court has developed the following test for determining whether a local regulation violates the commerce clause:

> "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." (*Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178, 90 S. Ct. 844; *City of Philadelphia v. New Jersey* (1978), 437 U.S. 617, 624, 57 L. Ed. 2d 475, 482, 98 S. Ct. 2531, 2536.)

We must now apply that test to the present case.

■■ First, we note that article III, section 8—3—5(23) makes no distinction between Illinois residents and non-Illinois residents who are applicants for a liquor license. All applicants must name a resident of Hoffman Estates as manager of the premises to which the license will be issued and therefore, the ordinance regulates evenhandedly. Second, defendants have correctly stated that control of alcoholic beverages falls within the police powers of the States. (See *Leisy & Co. v. Hardin* (1890), 135 U.S. 100, 34 L. Ed. 128.) According to defendants, paragraph (23) has the legitimate purpose of providing a responsible and authoritative official of the applicant who is easily accessible to local officials to handle the multitude of problems and complaints inherent in the sale of alcoholic beverages. We find this objective to be consistent with a local

government's interest in the distribution of alcoholic beverages inside its community. Finally, this ordinance only requires that one employee, the manager of the premises, be a resident of Hoffman Estates. While this ordinance has an effect on interstate commerce, that effect does not place an excessive burden on interstate commerce in relation to its putative local benefit. For the above reasons, we hold that paragraph (23) does not violate the commerce clause of the United States Constitution.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.