THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILBUR WILLIAMS, Defendant-Appellant.

Second District   No. 85—0216

Opinion filed April 22, 1986.—Rehearing denied May 19, 1986.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Morrow, State's Attorney, of Geneva (Kenneth R. Boyle, William L. Browers, and Marshall Stevens, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

In March 1982, the defendant, Wilbur Williams, was indicted for attempt (rape), deviate sexual assault and aggravated battery. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a), 11—3(a), 12—4(a).) He was involuntarily civilly committed to the Department of Mental Health and Developmental Disabilities (Department) after being found unfit to stand trial. On March 4, 1985, the circuit court established the defendant's maximum period of involuntary civil commitment to be 30 years, the maximum term he would have served if he had been guilty of the most serious crime with which he was charged. The defendant appeals, questioning whether he is entitled to receive statutory and compensatory good-time credit to reduce the maximum term of his confinement because he was found unfit to stand trial.

After the defendant was charged with the crimes, the trial court on October 8, 1980, found the defendant not fit to stand trial and remanded him to the custody of the Department. A discharge hearing

was conducted under section 104—25 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—25), on May 28 and July 22, 1982. At the conclusion of the hearing, the court stated:

"Gentlemen, the Court has listened very carefully to all the evidence in the case, and I feel by reason of the evidence presented that such evidence reflects that the defendant was or is guilty beyond a reasonable doubt of the offense charged, namely, attempt rape, aggravated battery, and deviate sexual assault.

With respect to the order of this court, I do not feel that it would be an appropriate application of the new statute to consider that in this case. Therefore, pursuant to section 104—25 of Chapter 38, the Court would order that the defendant be remanded to the Department of Mental Health and Developmental Disabilities for further treatment for the period not to exceed two years."

Periodic reports of the defendant's fitness were thereafter submitted to the court. After the two-year limitation period expired, the court found that the defendant was still unfit and, pursuant to section 104—25(g)(2) (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(2)), directed the Department of Mental Health at Chester to file a petition and conduct a hearing for defendant's involuntary civil commitment and to report the result of that proceeding to the court. On January 9, 1985, the court was advised by the acting superintendent of the mental health center that the defendant was involuntarily civilly committed to the Department. On January 21, the court entered an order granting the State's motion to nol-pros the criminal charges against the defendant and further ordered that the Department should not conditionally release or discharge the defendant without prior approval of the court. On March 4, 1985, the Kane County circuit court, having found the defendant was involuntarily civilly committed and that the necessary findings had been made pursuant to the Code, set the maximum period of commitment at 30 years, the maximum sentence for deviate sexual assault, the most serious of the offenses with which the defendant had been charged. Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(4).

The defendant asserts that the trial court correctly observed that section 104—25 of the Code (Ill. Rev. Stat. 1983, ch. 38, pars. 104—25(g)(2), (g)(4)) does not authorize application of good-time credit to reduce the defendant's period of treatment. However, the defendant contends because the statute is silent it must be viewed either as an unintentional oversight by the legislature or, if an intentional omis-

sion, a violation of equal protection. Therefore, under either argument, the defendant believes he is entitled to receive good-time credit at the time the court originally imposed his 30-year period of commitment to reduce the maximum term of his confinement.

Effective December 28, 1979, the legislature implemented changes in the law addressing the commitment and treatment of defendants who were unfit to stand trial. Sections 5—2—1 and 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—2—1, 1005—2—2) were repealed and replaced with sections 104—10 through 104—31 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—10 *et seq.*).

Like the old legislation, the new legislation has no accommodation awarding good-time credit from the time of the court's imposition of a period of commitment. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—2; Ill. Rev. Stat. 1983, ch. 38, par. 104—25.) Section 104—25(g)(2) states, in relevant part:

"Discharge hearing. ***.

* * *

If the defendant continues to be unfit to stand trial, the court shall determine whether he or she is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities *** for further treatment and shall be treated in the same manner as a civilly committed patient for all purposes, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(2).

Under the new legislation, for disposition of defendants who had been found unfit prior to the enactment of the present litigation:

"Upon reviewing the report, the court shall determine whether the defendant has been in the custody of the Department of Mental Health and Developmental Disabilities for a period of time equal to the length of time that the defendant would have been required to serve, less good time, before becoming eligible for parole or mandatory supervised release had he been convicted of the most serious offense charged and had he received the maximum sentence therefor. If the court so finds, it shall

dismiss the charges against the defendant, with leave to reinstate." Ill. Rev. Stat. 1983, ch. 38, par. 104—28(a).

The defendant first argues that since the prior legislation did not include good-time credit for those confined after being found unfit to stand trial and the new legislation creates the right to this credit to those defendants (Ill. Rev. Stat. 1983, ch. 38, par. 104—28(a)), the legislature, in correcting one apparent inequity, overlooked the specific inclusion of good-time credit to defendants who are found unfit to stand trial under the new legislation.

■ Contrary to defendant's first argument, section 104—28 of the new legislation does not allow good-time credit upon the court's establishment of a period of commitment to those defendants who were found unfit under the old statute. Rather, section 104—28 allows a trial court to review the status of a defendant who was found unfit before the present legislation was enacted. Section 104—28 only takes good time into account before dismissing the charges with leave to reinstate. This, in effect, does not grant those defendants any more rights, but places them on par with those defendants found unfit after the new legislation went into effect. Under the old section (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—2), the State was not allowed to dismiss the charges with leave to reinstate. However, under the new statute, the State can dismiss the charges with leave to reinstate. Ill. Rev. Stat. 1985, ch. 38, par. 104—23(b)(3).

Defendant contends this State's policy of awarding good-time credits to other criminal defendants further supports the conclusion that the legislature unintentionally failed to grant good time to defendants found unfit. For example, statutes grant good time to criminal defendants who are found not guilty by reason of insanity (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(1)(D)(b)), or guilty but mentally ill (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—6(a)), or fit to stand trial through the use of special provisions or assistance (Ill. Rev. Stat. 1983, ch. 38, pars. 104—22, 104—26(c)(5)). Finally, defendant argues if he were found fit to stand trial after a period of treatment and then was convicted and sentenced, he would be entitled to receive statutory and compensatory good-time credit for his treatment. Ill. Rev. Stat. 1983, ch. 38, par. 104—24.

■■ ■ Under established principles of statutory construction, the language of a statute should be given its plain and ordinary meaning. (*People v. Steppan* (1985), 105 Ill. 2d 310, 317.) Where the legislature uses certain words in one instance and different words in another, it is presumed that different results were intended. (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06.) In construing

statutes, the courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice. (*People v. Steppan* (1985), 105 Ill. 2d 310, 316.) We find, based on the general principles of statutory construction and on a logical interpretation of the statutory scheme, that the legislature specifically intended to exclude good-time credit to those defendants who have been involuntarily civilly committed after being found unfit to stand trial.

The language in section 104—25 refers to the maximum sentence as determined by section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(3)). This section states only that the maximum term of imprisonment for a Class X felony is 30 years. Neither this section nor section 104—25 refers to any other good-time credit provisions.

The fact that other statutes expressly grant good-time credit does not indicate that the failure was an unintentional oversight. Rather, it is apparent that the legislature intended to deal with other sections differently. Defendants who have been awarded good-time credit as a result of being found not guilty by reason of insanity, guilty but mentally ill, guilty after being found fit by the use of special provisions and assistance, and guilty after being found fit are situated differently than defendants committed due to unfitness for trial. The distinction is obvious. The former groups have gone through the trial process, have been found guilty of a crime and have had a criminal sentence imposed. As such, they are subject to criminal classification. The element of mental treatment is a mere adjunct to those defendants' punishments. Moreover, for equal protection purposes, defendants committed as a result of a finding of not guilty by reason of insanity constitute a special class that should be treated differently from other candidates for commitment. *People v. Larson* (1985), 132 Ill. App. 3d 594, 600.

However, a defendant who is found unfit to stand trial, and thereafter is involuntarily civilly committed with the charges dismissed with leave to reinstate is no longer considered a criminal. (See Ill. Rev. Stat. 1983, ch. 38, pars. 104—23(b)(3), 104—25(g)(2).) That defendant is civilly committed, subject only to the criminal court having jurisdiction to approve any conditional release or discharge.

Utilization of section 104—25(g)(4) protects the unfit defendant from the threat of indeterminate commitment because it provides a maximum period which can be mechanically applied to set a definite limit to a defendant's civil commitment period. A defendant is also protected from unjustified institutionalization by provisions which require periodic review of his condition by mental health professionals

and discharge by the court if he regains fitness. Once a defendant is found fit to stand trial and thereafter brought to trial and sentenced, he will be entitled to good-time credit for the time spent during his civil commitment. Ill. Rev. Stat. 1983, ch. 38, par. 104—24.

Thus, the unfit defendant's commitment period is set without good-time credit because he is civilly committed and no longer considered a criminal until he regains fitness and is brought to trial for his alleged crime. Because the unfit defendant faces the possibility of being tried and ultimately incarcerated for his crimes, the legislature clearly intended to exclude good-time credit until such time as it was necessary to consider it. Therefore, the legislature had a rational basis for determining the unfit defendant's maximum period of involuntary commitment without good-time credit differently from other defendants.

■ Defendant next argues, for the first time in this court, that initiating the award of good-time credit under section 104—28 to defendants who were found unfit prior to the new law (Ill. Rev. Stat. 1983, ch. 38, par. 104—28), while not authorizing the award to other unfit defendants who were found unfit under section 104—25 (Ill. Rev. Stat. 1983, ch. 38, pars. 104—25(g)(2), (g)(4)), violates his right of equal protection.

Our supreme court has repeatedly emphasized that nonjurisdictional issues which have not been properly presented at trial or in post-trial motions are not adequately preserved for review and, thus, cannot be considered on appeal. (*People v. Lykins* (1979), 77 Ill. 2d 35, 38; *People v. Amerman* (1971), 50 Ill. 2d 196, 197.) As for questions of constitutional dimension, it is fundamental that they cannot be properly raised for the first time in a court of review. The question must have been presented to the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such ruling. *People v. Brand* (1953), 415 Ill. 329, 337; see also *People v. Lang* (1984), 127 Ill. App. 3d 313, 317.

This constitutional question concerning equal protection was neither raised in nor ruled upon by the trial court. Moreover, the defendant has not advanced any reason why he failed to plead this issue. This challenge cannot be raised for the first time on appeal, and, therefore, we consider defendant's argument as having been waived for purposes of review.

The trial judge made a specific finding of guilty in his order at the conclusion of the discharge hearing. We note that a discharge hearing under section 104—25 (Ill. Rev. Stat. 1983, ch. 38, par. 104—25) is an "innocence only" hearing to determine whether to enter a judgment

of acquittal, not to pronounce a determination of guilt. (*People v. Rink* (1983), 97 Ill. 2d 533, 543.) Although the trial judge made a specific finding of guilty in his order, it is apparent from a reading of the record that the judge understood that a finding of guilty was not required under this section.

For the reasons stated above, the trial court's order is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.